Homeland Security Are you ready to proceed, Mr. Dewey? Yes, Judge Rader, and may it please the court, in dismissing Mr. Gonzalez's petition for enforcement, the full board committed three separate errors, any one of which is sufficient to reverse and remand this case. The first error was to allow the agency to revisit the issue of Commander Scully's eligibility for this position. That issue had been decided by the administrative judge in a decision that became final. Second, the full board allowed the agency to reconstruct the hiring selection in a way that is unlawful as a matter of law. It violates at least three statutes and the agency's own policies. Finally, the board gave credit to a two-sentence statement of the hiring official that essentially he would have done the same thing. That was an uncorroborated, unsworn hearsay statement that by itself could not meet the agency's burden of proof. Maybe it's that point that I need to ask about most. There were four people interviewed for this position. Gonzalez was not one of them. How could we assume that if Scully was not available, they wouldn't have chosen Scott? Or at least one of the other three interviewed people, Gonzalez didn't even seem to be in the running. We cannot assume that Mr. Scott would not have been selected. He may very well have been selected. But Mr. Gonzalez is entitled to a fair competition. If the remand had been the selection of Mr. Scott or anyone other than Mr. Gonzalez, and they were eligible for the position, for selection and appointment for the position, then his rights would not have been violated. I think it's important under the remedial statute 3330C to recognize that we have distinct things here. We have compensation due for losses that were by reason of a VO violation, and then separate from that is a compliance order, the right to compete. That is really what Mr. Gonzalez seeks here. The big picture, Your Honor, is to put Mr. Gonzalez, which is to put a stop to what has really been a big problem in the military agencies, the appointment of active duty military members to civilian positions. This was a big problem. Congress enacted a statute dealing with the Department of Defense on this, 3326. Why is that a problem? You've got somebody that you see would be an ideal person for this vital position. They happen to now be in active service, so they're eligible to retire. They retire, and it works out best for the country, doesn't it? If there's no preferential treatment, yes, Your Honor, but there is a lot of preferential treatment. A lot of times, the very people who are selected are involved in creating the position to begin with. There's no evidence for that here. I'm sorry. I don't mean to suggest that there was ... Well, of course, it's hard to know exactly what went on behind the scenes, but the- Yeah, but we've got a presumption that people act with regularity and in good faith, and I don't think you've suggested here that that presumption doesn't apply. Well, I think that presumption doesn't apply when we look at the act itself of holding open this position for Commander Scully. Whatever the good faith or bad faith of the person doing it, that is preferential treatment. That is holding a position open for a retiring member of the military, and that violates the agency's own policy. The policy- Let me go back to maybe one of your first points here. I'm a little confused about a number of things in this case. One is the argument with respect to the two AJ decisions, because as I read them, so you can tell me why I'm wrong, the initial decision in April was not explicit with respect to whether or not, is it Commander Scully or Captain Scully, could compete in the reconstruction. It was only in the second decision that the AJ explicitly said that Captain Scully is excluded. I don't even understand. Am I wrong about that? I mean, are you reading, does your case depend on our reading the April decision as compelling Scully to not participate? No, Your Honor, for several reasons. One is res judicata. At page 24, at the very beginning of those proceedings, the AJ frames the issue. It says, I cannot see how Commander Scully is eligible for this position. Now, if the agency wants to say that, yes, he is eligible, because what we can do is change the term to leave, or to start date, to coincide with- Everybody agrees. I mean, they found that his appointment was improper and unlawful, then nobody's trying to revisit that issue as far as I understand now. But the question, I see it as a separate question, if you're going to do a reconstruction, what not his participation is allowed at all. And I don't think that question was answered dispositively, at least until the AJ reached the second recommendation, right? Well, he, not necessarily, Your Honor, because he's talking about reconstruction. That term has meaning in the board of proceedings, and it goes back to Dean and other cases. And that reconstruction means go back to the original circumstances at the time of selection. And if we do that, we can't include Commander Scully, because he's not going to be able to make it on time for the, given the start date in this position. Well, we don't know that. There was no start date. I mean, I looked at some of the things you referred us to in the appendix in terms of the vacancy announcements and so forth. Is there any start date included in those? Was there any firm start date that you can only apply for this position if you're ready to start by December 1st? Well, I mean, we have the warning given in October that you better show up, is it, page 92 of the record, the hiring official says, show up by December 9, or we're going to, we might go to the next person. And then there's references to several other points about how normally it's 45 days to show up. So the customary policy was always that he needed to show up by December 9th. And that was, as I say, very clear. And he was threatened that if, basically, if you don't show up, you will, we'll go to the next guy. Mr. Dewey, the court's had an opinion since the briefing was finished, the Marshall case that came out just a few days ago. In that, our court says reconstruction may be an appropriate way to comply in situations where it's unknown whether a veteran would have been selected. But the record here is clear regarding what would have occurred absent the investigation. Thus, there's no need for a reconstituted reconstruction process. Well, Your Honor, I argued Marshall here a couple months ago. The difference in Marshall is that that was about compensation. We were trying to determine whether or not- That seems to hit right on this point, though, doesn't it? Where it's pretty clear that he's not going to be selected anyway? It still violates his right to compete. Because he was, and that was actually something that the AJ decided. And that decision is final. And I think if we look at the procedural posture of this case, right or wrong, that was a decision of the AJ that Mr. Gonzalez's right to compete was violated. And the AJ didn't even need to get to the point of figuring out whether or not Mr. Gonzalez would have gotten the job. It was a viola violation for them to do this. But the essence here, what everybody agreed was ultimately unlawful was not Mr. Commander Scully's competing for the vacancy. He had every right to be considered for the vacancy. It's only the question of the appointment day, right? Of holding it open for Commander Scully in a way that they would not do for anybody else. There's this idea that, and again- Is this harmless error because Gonzalez wouldn't have been hired anyway? It is harmful because he was unable to compete. It's a violation of Mr. Gonzalez's right to compete when an eligible, an ineligible person is appointed for the position. That violation- That might be a pretty effective argument if Mr. Scott were here before us, Mr. Gonzalez is. True, but I don't think that we have that kind of harmless error analysis when it comes to a right to compete. The reconstruction should deal with the eligibles at the time of the selection. I think it would be, I would agree with that if it were a question of seeking compensation, but that is not what Mr. Gonzalez seeks. He seeks a fair competition, and that's something this court has consistently provided veterans under VO. Now, that doesn't necessarily mean that the court needs to order the firing of a commander. Where was the competition unfair, though? Looks like they all competed equally, and only four others, excluding Gonzalez, were even considered. I don't know where the unfair competition is. Look how urgent it was, Your Honor, to get somebody in this position. We see it in the emails at page 50. Well, they had three other people, who presumably were available. True, but the point is we're doing something special here for an active duty member of the military. That's what's unfair. We're holding open the position. I don't know how that prejudices Mr. Gonzalez, though. Well, again, I think that by definition, if an ineligible applicant is appointed for the position, that violates Mr. Gonzalez's rights. He wasn't ineligible. He wasn't ineligible to compete. Your opinions are based on the assumption that he absolutely would not have gotten the job, would not have been selected, if they had known that he couldn't start until two weeks after he actually did. We don't know that. I mean, at worst, we don't know that. At best, for the other side, we know that the commander made a statement that he would have selected him even at the later date. Isn't all your argument based on the assumption that they would never in a million years have picked Scully if they had known that they would have had to wait a few more weeks? Well, I think the key to my argument is that they didn't know when he would be available at the time of selection. In fact, it wasn't until March of 2008, March 5th, that we even know what Commander Scully's terminal leave date is. It's incorrect to say, well, he would have waited 39 days or delayed the start date. We did not know and could not know at the time of selection when Commander Scully would be available, so we have no evidence in the record that if we look at the original circumstances of the time of selection, they would have selected the same person. All we have is a statement that, well, come December, I would have waited, but that's not the question. Under Marshall and under other board decisions, Andres, we don't look to what happened in December. We look to what happened in September and what was known and what could not be known back then. That's the key. What the agency is attempting to do is take what was learned in March, throw it back into the selection process, and say, oh, we would have waited, but we can't do that. That's not a reconstruction of the original circumstances. Those are new circumstances. We're taking knowledge from March and pushing it back into September. Getting back just briefly, Your Honor, Judge Rader, to your concern about harmless error, consider the harm of the precedent. If this is really the end of 5534A, the terminal leave statute, if this decision stands, no one is ever going to bring another case if you can violate that with impunity unless you happen to be, I mean, even Mr. Scott might have a tough time making the kind of showing Your Honor is talking about. In addition, we have all these other eligibility rules where we can have hiring officials say, well, I would have waited for the applicant to become eligible in reconstruction. We have the agency's own policy against this kind of preferential treatment given to active duty members of the military, with the prohibited personnel practice of 2302B6 about giving this kind of preferential treatment. All those policies are at stake in this decision, and if it stands- Yes, but we don't have the right parties here to consider all those. Gonzales was too far down the line, I mean, if he was even in line. Well, again, Mr. Gonzales recognizes that if in the reconstruction they were to choose somebody else, that's okay. He doesn't do this out of, didn't even, all he wanted originally was just an explanation and the agency wouldn't even give it to him. They wouldn't give that explanation to the Department of Labor. I think you have a very potentially harmful precedent if this decision stands. All that should be done is have a man ask them to reconstruct in a way that's lawful. If it's okay, I would like to reserve my rebuttal time. Thank you, Mr. Dewey. Ms. Groner? Thank you. I'd like to start by responding to one point that Petitioner's Counsel said. He said that in the reconstruction, the MSPB needed to look to September, and that's actually not the right date. Under Marshall, the reconstruction really should go back to October when the offer was confirmed to Mr. Scully. At that point in time, I think it was October 17th, Mr. Scully was told that he needed to start within 45 days unless there were unusual circumstances. He replied, it won't be a problem because I've been told by my personnel office that I can start on December 7th. That was the error. That was the mistake. He got misinformation from his personnel office in the military. He passed that on to the Coast Guard. But in October, the Coast Guard didn't know if Scully would retire on time, did it? That's correct. The Coast Guard made very clear to him- I'm still trying to figure out why you didn't argue to us harmless error. Because he was entitled to a lawful selection process, and until October, he had a lawful selection process. Starting in October, the selection process broke down, and we didn't appeal the finding of the MSPB that a reconstruction was necessary because the appointment of Mr. Scully in December was unlawful. We don't challenge that. We agree that the appointment of Mr. Scully in December was unlawful because he wasn't on terminal leave at that time, and Congress is very clear. You can't both be in the military and hold a civilian position. If you're supposed to have a reconstruction, which is supposed to, I mean, there is language in Marshall, and I don't know if it's the same language, but it talks about reconstruction seeks to determine whether the agency would have selected the veteran at the time of the original selection. Reconstruction does not allow an agency to conduct a new selection process under new circumstances. That's exactly right. If we want to do a construction that puts us on the old circumstances, you've got this Scully, they say, if you can't be here by December 9th, we may have to resend the job and move on to the second candidate. If we put ourselves back in that position, it looks like, in fact, Commander Scully, if all things had been done lawfully, would have had to say, can't do it, sorry. That's exactly where the reconstruction had to go back to, exactly that memo, which is at JA 92. That's October 17th, when they said to him that we may have to rescind the job offer if you can't start within 45 days. That was the purpose of the reconstruction. Reconstruction is always with hindsight. They went back to Rear Admiral Watson in the reconstruction, and they said, what would you have done? That's the whole purpose of reconstruction, to find out how the agency would have exercised its discretion in October 2007 if they would have found that Mr. Scully wouldn't be on terminal leave. But I didn't think, is there any case law on whether or not you can put on new evidence and new information that wasn't existent at the time? It's not new evidence. There was an exercise of discretion. What if the memo had said, we will absolutely, positively rescind the job offer if you're not here by December 9th? Would that be a different case? That would be a completely different case, because this was a discretionary act that Admiral Watson could exercise. And so then the question is, they ask him, okay, how would you have exercised the discretion if you didn't have this mistake? If Mr. Scully hadn't told you that he'd be on terminal leave in December, what would you have done? How would you have exercised the discretion? And so now it's this court's responsibility to determine if there's substantial record evidence to support the board's finding that the agency properly exercised its discretion in the reconstruction. And there is record evidence. And let me direct your attention to the job solicitation, which begins at JA 55. But if you look at JA 67, at the end of the job announcement, it says, what to expect? And it says, we expect to make a selection within 30 to 90 days of the closing date of this announcement. And the closing date of this announcement was August 2nd, 2007, according to JA 52. So now if the agency had taken the full 90 days, that would have brought us to early November. And then if they would have taken the month that it took from September, when they made the initial offer, until October, when they had the confirmed offer, getting him to call his security clearance and drug tests, that would have brought us to December. And if you then gave him 45 days, that would have brought him to January 17. So there is substantial evidence in this record to support the exercise of discretion by Admiral Watson at JA 117, where he said that he would have waited until through January 2008, but not to April 1, 2008. So let's assume we have a record that doesn't have any statement by Admiral Watson. Do you lose under that circumstance? Well, that's the reconstruction. The statement by Admiral Watson is the reconstruction. It's at JA 117. That was what the board ordered the agency to do, to figure out what they would have done had there not been a mistake. And so what he said is, he would have waited through January, and that's consistent with the job announcement, and it's also consistent with the ordinary practice. You all hire clerks. You wait until they pass the bar. That's not a prohibited personnel practice. Congress made clear that retiring people from the military can apply for civilian jobs, and they can be paid their terminal leave while they're working on the civilian job. If it's a prohibited personnel practice to wait for somebody to retire from the military, then the statute would have no meaning, because no one would ever be able to be paid their terminal leave. For these reasons, the court should affirm the findings of the law. Mr. Dewey? Your Honors, I think harmless error is really the only way that the court can get out of the many hurdles that would be necessary to affirm the decision below. And the reason why not to really introduce harmless error to this body of law is that consider what will happen in merit promotion certificates. Anything will go now when it comes to eligibility requirements, because even Mr. Scott, I think, would have a very difficult time in a merit promotion certificate saying, yeah, I would have gotten the job. Well, we know that some people were recommending that he get the job, but Commander Scully didn't. But it's not like a numerical register in a competitive service where it's very clear what would have happened. It's rather nebulous, and it's always going to be difficult for somebody in a merit promotion certificate to say, I would have gotten it. But again, Mr. Gonzalez doesn't seek compensation for lost wages and benefits. He just seeks a fair competition. And he seeks to put to an end this kind of preferential treatment for a singular applicant for this position, holding open this position for an active duty member of the military in a way that they did not say they would do for anyone else who applied for it. Do you think the AG was wrong in saying, in prescribing reconstruction? No, Your Honor, I don't have any objection to ordering reconstruction in this situation. I think in this situation, reconstruction is the appropriate remedy, mainly because of the difficulties of establishing causation, unlike the competitive certificate where maybe an OPM passover would have been required. In this situation, it's very difficult to establish that kind of causation. So it's not- Couldn't he have ordered a re-announcement of the position? Well, I'm sorry, I don't quite understand. Couldn't the AJ have ordered a re-announcement of the position instead of a reconstruction? Perhaps, Your Honor, but that decision was final, and the agency didn't appeal it. So whatever the AJ did is what we're bound by here. Thank you.